Filed 11/20/15  Moen v. Slater CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTINA MOEN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SUSAN SLATER,<br><br>    Defendant and Respondent. | D068489<br><br><br><br>(Super. Ct. No. CIV VS 1105959) |

APPEAL from a judgment of the Superior Court of San Bernardino, Brian S. McCarville, Judge.  Affirmed.

Law Offices of Timothy A. Chandler and Timothy A. Chandler for Plaintiff and Appellant.

Charlston, Revich & Wollitz and Tim Harris for Defendant and Respondent.

Actual innocence is an element of the cause for legal malpractice against a criminal defense attorney.  (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 534, 545 (*Wiley*).)  The Supreme Court reaffirmed the actual innocence requirement in *Coscia*

*v. McKenna & Cuneo* (2001) 25 Cal.4th 1194 (*Coscia*), holding that a convicted criminal defendant suing for malpractice must first obtain either reversal of the conviction or other postconviction exoneration before pursuing a claim for legal malpractice. (*Id.* at p. 1201.)

In this civil lawsuit, appellant Christina Moen sued respondent Susan Slater for malpractice based on Slater's representation of Moen in criminal proceedings in which Moen pleaded guilty to one count of child abuse. In a nonpublished opinion, *People v. Moen*, E054987 (June 28, 2013) (*Moen*), Division Two of this District affirmed an order denying Moen's motion to withdraw her plea of guilty. Thus, Moen stands convicted of a felony in *People v. Moen*, San Bernardino County Superior Court case No. FVI-1002274 (case No. FVI-1002274).[1] Despite this conviction, Moen proceeded with her complaint in this action.

The trial court sustained without leave to amend Slater's demurrer to the complaint, citing *Wiley* and *Coscia*. Given the record in this appeal and the Supreme Court's direction in *Wiley* and *Coscia*, the trial court properly sustained without leave to amend Slater's demurrer; Moen did not obtain reversal of her conviction (or other postconviction exoneration) and failed to show that her complaint could be amended to state a cause of action. Accordingly, we will affirm the judgment of dismissal.

---

[1] On our own motion, we take judicial notice of the documents that the trial court judicially noticed. (Evid. Code, § 459, subd. (a)(1).) This includes reporter's transcripts from hearings on October 28 and December 9, 2010, in case No. FVI-1002274; the clerk's transcript in *People v. Moen*, case No. E054987 (case No. E054987); *Moen*; and the Supreme Court's docket *People v. Moen*, case No. S212623.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.     *Case No. FVI-1002274 and Case No. E054987*

In October 2010, the District Attorney of San Bernardino County charged Moen and a codefendant (Moen's boyfriend) with one count of corporal injury to a child in violation of Penal Code section 273d, subdivision (a), a felony.  Slater was appointed to represent Moen following her arrest.

On October 21, 2010, represented by Slater, Moen turned down an offer from the district attorney under which Moen would plead guilty to a misdemeanor in exchange for which she would have served 60 days in jail and would testify against the codefendant. After remaining in custody for a week, Moen appeared in court (again represented by Slater) and accepted an offer of immediate release with no additional time in custody in exchange for a plea of guilty to the felony charge.  Moen signed and initialed the three-page change of plea form, a factual basis for the change of plea was established on the record, and the court accepted Moen's plea of guilty.

When Moen appeared for pronouncement of judgment on December 9, 2010, Slater orally advised the court that Moen wanted to withdraw her guilty plea.  After proceedings described in detail in *Moen*, the court denied Moen's motion to withdraw her plea and placed Moen on probation for three years under various terms and conditions.

In April 2011, Moen (through new counsel) filed a written motion to withdraw her guilty plea.  The People filed a written opposition, and Moen filed a written reply to the

3

opposition. Following a hearing in September 2011 at which Slater testified and counsel presented argument, the court denied Moen's written motion.

Moen appealed from the order denying her written motion to withdraw her plea. The appeal, case No. E054987, resulted in *Moen*, which affirmed the order denying Moen's motion to withdraw her plea and ruled in part that Moen "failed to establish she received ineffective assistance of counsel" related to her guilty plea entered in case No. FVI-1002274.[2] (*Moen*, *supra*.) The California Supreme Court denied review of *Moen*.

B.      Moen v. Slater:  *The Underlying Case and This Appeal*

In November 2011, which was shortly after the trial court had denied Moen's written motion to withdraw her guilty plea in case No. FVI-1002274 and well before case No. E054987 had been decided, Moen filed the underlying malpractice action against Slater. In one cause of action for professional negligence, Moen alleged that Slater breached her duty of due care and caused Moen damages in advising Moen during the plea and sentencing proceedings from late October 2010 through December 9, 2010. More specifically, Moen alleged:

> "[Moen] would have obtained a better result if [Slater] had acted as a reasonably careful attorney.  **[Moen] is and was factually innocent of the charge against her and would have been found not guilty had [Slater]**

---

[2]      The order denying the motion to withdraw the plea contained other substantive rulings that Moen challenged in the appeal.  They are all discussed and affirmed in Division Two's opinion (*Moen*, *supra*); none has any bearing on the issues in the present appeal.

4

**acted as a competent attorney.** [Moen] was convicted of a this [*sic*] felony only because . . . Slater[] was an incompetent attorney on this case."

Slater demurred to Moen's complaint. Relying principally on *Wiley* and *Coscia*, Slater argued that because of the existing judgment of conviction in case No. FVI-1002274, Moen was precluded from prosecuting a claim of professional negligence against her former criminal defense attorney, Slater. Following briefing, the trial court twice stayed the action, pending final disposition of Moen's appeal from the judgment in case No. FVI-1002274.

After the Supreme Court denied review of *Moen*, the parties rebriefed Slater's demurrer, and the court held a telephonic hearing. The court granted the parties' requests for judicial notice and sustained Slater's demurrer without leave to amend, citing *Wiley* and *Coscia*.

In May 2014 the court entered a judgment of dismissal, and Moen timely appealed in June 2014.

## II.

## DISCUSSION

On appeal, Moen argues the trial court erred (1) in sustaining the demurrer, because by accepting as true the allegations in her complaint, she properly alleged negligence; and (2) in denying leave to amend, since her proposed first amended complaint properly alleged not only negligence, but also breach of fiduciary duty and breach of contract. We disagree and will explain: (1) because of the finality of the *Moen* opinion (and no other pending attempt at postconviction relief), Moen cannot allege

5

actual innocence, a prerequisite to asserting a claim against a criminal defense attorney based on the provision of professional services; and (2) since the causes of action in Moen's proposed first amended complaint all arise from the same primary right as the professional negligence claim, they fail along with the negligence claim.

A.      *Standards of Review*

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)  In so doing, "[w]e independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense."  (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 81.)

Where, as here, the demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm."  (*Blank*, *supra*, 39 Cal.3d at p. 318.)  In this regard, "[t]he burden of proving such reasonable possibility is squarely on the plaintiff."  (*Ibid.*)  However, where the nature of the plaintiff's claim is clear and under substantive law no liability exists, a court does not abuse its discretion in denying leave to amend, "because

6

no amendment could change the result." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 460.)

B.     *The Trial Court Did Not Err in Sustaining Slater's Demurrer*

In *Wiley*, a jury convicted Wiley of battery; years later the court overturned the conviction on a petition for writ of habeas corpus, and the People dismissed the case rather than retry him. (*Wiley*, *supra*, 19 Cal.4th at pp. 534-535.) Wiley then sued his public defender and the county that employed the defender, alleging malpractice on the defender's part. (*Id.* at p. 535.) Neither the trial court nor the Court of Appeal required a showing of actual innocence (*ibid.*), but the Supreme Court disagreed, holding: "in a criminal malpractice action actual innocence is a *necessary element of the plaintiff's cause of action*."[3] (*Id.* at p. 545, italics added.)

In *Coscia*, Coscia sued his criminal defense attorney for malpractice after Coscia had pleaded guilty to one felony count of conspiracy to violate federal securities laws. (*Coscia*, *supra*, 25 Cal.4th at p. 1198.) As particularly relevant to the issue in Moen's appeal, Coscia "contended that the trial court should have permitted him to amend the complaint to allege that he had entered in a plea agreement *despite his innocence of the criminal charges*." (*Ibid.*, italics added.) The Supreme Court disagreed. The *Coscia*

---

[3]     The court based its decision on number of policy considerations. First, courts should not permit guilty defendants to profit from their own wrongs. (*Wiley*, *supra*, 19 Cal.4th at p. 537.) Second, allowing guilty defendants to recover from their former attorneys wrongly shifts responsibility away from the defendants. (*Ibid.*) Third, guilty defendants whose convictions or sentences resulted from their attorneys' incompetence can obtain postconviction relief on that basis. (*Id.* at pp. 542-543.)

court first confirmed the holding in *Wiley*: "[W]hen a former criminal defendant sues his or her attorney for legal malpractice, the former client's actual innocence of the underlying criminal charges is a necessary element of the malpractice cause of action." (*Coscia*, at p. 1197, citing *Wiley*, *supra*, 19 Cal.4th 532.) The court then applied that holding in the context of Coscia's plea and subsequent allegation of innocence, ruling in relevant part that "postconviction exoneration" by a former criminal defendant "is a prerequisite to prevailing on a legal malpractice claim." (*Coscia*, at p. 1198.) More specifically, *Coscia* "h[e]ld that an intact conviction precludes recovery in a legal malpractice action even when ordinary collateral estoppel principles otherwise are not controlling, for example because a conviction was based upon a plea of guilty that would not be conclusive in a subsequent civil action involving the same issues." (*Id.* at p. 1204.)

*Wiley* and *Coscia* are controlling here. Because Moen has been convicted of the crime of corporal injury to a child (Pen. Code, § 273d, subd. (a)) and because she has not obtained exoneration by postconviction relief, Moen cannot allege a necessary element of her cause of action for legal malpractice — namely, actual innocence.

Moen argues that "*Wiley* and its progeny do not address a factually innocent accused who was duped by her attorney into pleading guilty." To the contrary, *Coscia* addresses this identical situation. In *Coscia*, Coscia pleaded guilty to one felony count, admitted his guilt under oath, confirmed that his plea and waiver of certain rights were made freely and voluntarily, affirmatively acknowledged his participation in the crime, and signed a statement conceding his criminal conduct. (*Coscia*, *supra*, 25 Cal.4th at

8

p. 1198.)  At the time he filed his malpractice complaint, *Wiley* had not been decided, and actual innocence was not an element of the cause of action.  (*Coscia*, at p. 1211.)  Since on appeal Coscia contended that the trial court should have permitted him to amend his complaint to allege that he had entered into the plea agreement "despite his innocence of the criminal charges" (*id.* at p. 1198), the Supreme Court remanded with instructions to allow Coscia to amend his complaint to allege actual innocence (and to stay the proceedings "as necessary to permit Coscia's timely pursuit of postconviction remedies") (*id.* at p. 1211).

Here, like Coscia, Moen pleaded guilty to one felony count; admitted her guilt on the record under oath; confirmed that her plea and waiver of certain rights were made freely and voluntarily; and signed (and initialed in 35 places) and filed a change of plea form in which she expressly pleaded guilty, acknowledged her various rights and responsibilities, and waived certain rights.[4]  Unlike Coscia, here, before the court ruled on Slater's demurrer, Moen already had pursued her postconviction remedy[5] — unsuccessfully.

---

[4]     After questioning Moen about the change of plea form she had signed and filed and about her understanding of the proceedings, on the record the court expressly found that Moen:  (1) "read and underst[oo]d the declaration and plea form"; (2) "underst[oo]d the nature of the charge to which [she was] pleading"; (3) understood "the consequences and punishments for the offense[]"; (4) understood "each of [her] constitutional rights"; and (5) "knowingly, intelligently, freely and voluntarily waived [her] constitutional rights."  On the written change of plea form, the court made similar findings.  Moen does not argue on appeal that any of these findings lack substantial evidence.

[5]     Indeed, the court twice stayed the proceedings against Slater in order to give Moen the opportunity to pursue her postconviction remedies, as required by *Coscia*, *supra*, 25

9

In a related argument, Moen quotes from *Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605-606, and suggests that ordinary principles of collateral estoppel should not apply " 'against a party who, having pleaded guilty to a criminal charge' " — as opposed to having been found guilty *after trial* as in *Teitelbaum Furs* — " 'seeks for the first time to litigate his [criminal] cause in a civil action.' "  In *Coscia*, the Supreme Court disapproved of the *identical* argument Moen raises here:

> "[W]e hold that an intact conviction precludes recovery in a legal malpractice action *even when ordinary collateral estoppel principles otherwise are not controlling, for example because a conviction was based upon a plea of guilty that would not be conclusive in a subsequent civil action involving the same issues*.  (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.*, *supra*, 58 Cal.2d at pp. 605-606.)  We thus conclude that the Court of Appeal erred in applying the rule in *Teitelbaum Furs* in the context of a criminal malpractice action."  (*Coscia*, *supra*, 25 Cal.4th at p. 1204, italics added.)

The court explained that in *Teitelbaum Furs* it did not address "the unique practical and policy considerations against permitting a criminal defendant with an intact conviction to recover on a malpractice claim against his or her former criminal defense counsel." (*Coscia*, *supra*, 25 Cal.4th at pp. 1204-1205.)  After analyzing those considerations in *Coscia*, however, the court "conclude[d] that such a conviction, *regardless whether it follows a plea of guilty* (or nolo contendere) or a trial, bars proof of actual innocence in a legal malpractice action."[6]  (*Coscia*, at p. 1205, italics added.)  Without the ability to

Cal.4th at pages 1210-1211 ("court should stay the malpractice action during the period in which [the malpractice] plaintiff timely and diligently pursues postconviction remedies").

6      By not mentioning *Coscia* in her opening brief, Moen necessarily did not consider this binding authority.

10

prove actual innocence, Moen cannot succeed with her malpractice claim. (*Wiley*, *supra*, 19 Cal.4th at p. 543; accord, *Coscia*, at pp. 1197, 1200.)

Finally, Moen suggests that *Coscia* is inapplicable because it "did not contemplate a defendant whose factual innocence is apparent."[7] Having reviewed the record of Moen's change of plea to guilty, we do not agree that Moen's factual innocence is "apparent." In any event, under *Coscia*, we are to consider only "exoneration by postconviction relief," which the Supreme Court requires as "a prerequisite to recovery for legal malpractice arising out of a criminal proceeding" (*Coscia*, *supra*, 25 Cal.4th at p. 1199), not whether innocence may be "apparent."

For these reasons, Moen did not meet her burden of establishing reversible error in the sustaining of Slater's demurrer. Because Moen has not obtained exoneration of her criminal conviction by postconviction relief,[8] Moen cannot allege a necessary element of her cause of action for legal malpractice — namely, actual innocence.

---

[7] We disagree with Moen's attempt to distinguish *Coscia* on the basis that "Coscia did not assert or claim that he was innocent." The Supreme Court allowed Coscia to amend his complaint "to allege that he had entered into a plea agreement *despite his innocence of the criminal charges*" (*Coscia*, *supra*, 25 Cal.4th at pp. 1198, 1211, italics added) — as Moen has done already. However, such an allegation does not overcome the "prerequisite" of "exoneration by postconviction relief" where a judgment of conviction was obtained. (*Id.* at p. 1199.)

[8] We again note that, in attempting to obtain postconviction relief, Moen received an appellate court ruling that she "failed to establish she received ineffective assistance of counsel." (*Moen*, *supra*.)

11

C.  *The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend*

With her opposition to Slater's demurrer, Moen submitted a proposed first amended complaint (PFAC) to the trial court and asked that if the court was inclined to sustain the demurrer, then she should be allowed to amend her complaint as proposed. On appeal, Moen argues that the court abused its discretion in denying leave to amend.

The first paragraph of the PFAC provides in full as follows:

"[Moen] alleges that [Slater] is liable for professional negligence, breach of fiduciary duty, and breach of contract. [*Slater*] *provided legal services to* [*Moen*] *at a standard well below the standard of care required under California law*." (Italics added.)

The next five numbered paragraphs of the PFAC contain background facts and are almost identical to the first six numbered paragraphs in the original complaint. The first cause of action in the PFAC is for professional negligence and contains almost identical allegations as those in the original complaint. The second cause of action in the PFAC incorporates by reference the preceding paragraphs (alleging negligence) and contains one additional paragraph alleging the elements arguably necessary to plead breach of fiduciary duty. The third cause of action in the PFAC incorporates by reference the preceding paragraphs (alleging negligence and breach of fiduciary duty) and contains one additional paragraph alleging the elements arguably necessary to plead breach of contract. The prayer for relief in the PFAC is identical to the prayer in the original complaint, except for the deletion of a claim for attorney fees.

Moen's attempt to distinguish her proposed causes of action for breach of fiduciary duty and breach of contract from her original cause of action for professional negligence

12

does not establish that the existing defect can be cured. In this analysis, our opinion in *Lynch v. Warwick* (2002) 95 Cal.App.4th 267 (*Lynch*) provides guidance.

In *Lynch*, we applied *Wiley* and *Coscia* to a convicted criminal defendant's civil suit against his former attorney for legal malpractice, breach of fiduciary duty and breach of contract. (*Lynch*, *supra*, 95 Cal.App.4th at p. 269.) Like Moen here, the plaintiff in *Lynch* alleged that his criminal defense attorney advised him to plead guilty, inter alia, without interviewing him, preserving evidence or communicating adequately with him about the case. (*Id.* at p. 270.) We concluded that the actual innocence requirement applied to *all* of the plaintiff's claims, because even the claims for breach of fiduciary duty and breach of contract were, in substance, claims for legal malpractice; all of the claims sought recovery based on the underlying allegation that the attorney inadequately represented the plaintiff in the criminal proceedings. (*Id.* at pp. 273-274.) "[T]hus, while titled differently, all three causes of action seek recovery for legal malpractice." (*Id.* at p. 270, fn. 1.)

That is because " 'the nature of a cause of action does not depend on the label the plaintiff gives it or the relief the plaintiff seeks but on the primary right involved.' " (*Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184, 1190 (*Khodayari*).) Our Supreme Court has described the "primary right theory" — " 'a theory of code pleading that has long been followed in California' " — as follows:

> " 'It provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. . . . [¶] As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must

13

therefore be distinguished from the *legal theory* on which liability for that injury is premised: "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." [Citation.] The primary right must also be distinguished from the *remedy* sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." ' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904.)

In *Khodayari*, for example, the plaintiff sued his former criminal defense attorney who had represented him in prior victim restitution and related probation violation proceedings. (*Khodayari*, *supra*, 200 Cal.App.4th at p. 1186.) In addition to alleging legal malpractice, the plaintiff also alleged causes of action for fraud, intentional misrepresentation, concealment, deceit, constructive fraud, negligent misrepresentation, negligence, breach of fiduciary duty, intentional infliction of emotional distress, abuse of process, breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair competition. (*Id.* at p. 1187.) Because "the primary right involved in all of [the plaintiff's] claims is 'the right to competent legal representation[,]' . . . for application of the actual innocence requirement [in *Wiley*], all are properly characterized as claims for legal malpractice." (*Id.* at p. 1190.)

Accordingly, just as in *Lynch* and *Khodayari*, all three causes of action in Moen's PFAC are based on one primary right — the right to competent legal representation. Given this primary right and our discussion at part II.B. *ante*, *Wiley* and *Coscia* require that Moen plead and prove actual innocence by first obtaining exoneration of her criminal conviction by postconviction relief in order to proceed with the causes of action alleged

14

in the PFAC. Because Moen has not obtained exoneration of her criminal conviction, however, the proposed amendment would be futile.

For these reasons, Moen has not met her burden of establishing that the trial court abused its discretion in denying leave to amend her complaint.

DISPOSITION

The judgment of dismissal is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.

15