Filed 10/25/13  Schwartz v. City of Dana Point CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEFFREY M. SCHWARTZ,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CITY OF DANA POINT,<br><br>    Defendant and Respondent. | G047633<br><br>(Super. Ct. No. 30-2012-00558940)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

Schwartz Law and Jeffrey M. Schwartz for Plaintiff and Appellant.

Rutan & Tucker, A. Patrick Muñoz, Jennifer Farrell and Alisha Patterson for Defendant and Respondent.

*          *          *

This is not the first time we have been presented with the issue of the City of Dana Point's (Dana Point or the City) zoning regulations prohibiting medical marijuana dispensaries within the City. Dana Point's zoning regulations list permitted uses. An unlisted use, such as a marijuana dispensary, is not permitted.

Plaintiff Jeffrey M. Schwartz, a medical marijuana user, brought the underlying action for declaratory relief, alleging the City's efforts to "shut down" all medical marijuana dispensaries, collectives or cooperatives in Dana Point violated his rights. The City demurred to the complaint, contending Schwartz lacked standing to challenge the zoning regulations because he did not have a fundamental right to acquire medical marijuana and argued Schwartz should be estopped from challenging the zoning regulations because he was counsel of record in another matter wherein the same issues had been raised and rejected.[1] The superior court sustained the demurrer without leave to amend and dismissed the action, finding Schwartz lacked standing. We affirm.

I

FACTS

Schwartz, an attorney, uses medical marijuana pursuant to his physician's recommendation. He filed a complaint against the City for declaratory relief, alleging the City "shut down all of the medical marijuana collectives in that city," including Beach Cities Collective (Beach Cities). The complaint further alleged Schwartz was a member of Beach Cities, which was his "primary source of medical marijuana." The complaint also alleged the City's action "substantially interfered" with his ability to follow his doctor's recommendation, in that he drove 1.5 miles to Beach Cities to acquire medical

_____

[1] Schwartz unsuccessfully represented Malinda Traudt, another medical marijuana user, in her action for declaratory relief against the City in connection with its efforts to close all medical marijuana dispensaries and collectives in Dana Point. (*Traudt v. City of Dana Point* (2011) 199 Cal.App.4th 886, review granted Jan. 18, 2012, S197700, review dism. Mar. 14, 2012.)

marijuana but must now drive 50 miles to acquire it. Schwartz alleged the City's action violated his rights to: health care (Prob. Code, § 4615); health care decisions (Prob. Code, § 4617); control health care decisions (Prob. Code, § 4650); privacy (Cal. Const., art. I, § 1); and equal protection (Cal. Const., art. I, § 7).

The City demurred to the complaint. The superior court sustained the demurrer without leave to amend and entered a judgment of dismissal, finding Schwartz "lacks standing to sue as he has no ownership interest or control of the dispensary, and . . . there is no fundamental right to medical marijuana."

## II

## DISCUSSION

### A. *Standard of Review*

A defendant may challenge by way of a demurrer the plaintiff's standing to bring an action. (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796; *Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1041.) In ruling on a defendant's demurrer, the trial court accepts as true all well-pleaded material facts and any matters judicial noticed, but disregards conclusions of law. (*Burt v. County of Orange* (2004) 120 Cal.App.4th 273, 277.) On review, we review the trial court's decision de novo (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191) to determine whether the complaint states a cause of action under any legal theory, assuming the truth of the complaint's factual allegations. (*McCall v. PacficCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We must affirm an order sustaining the demurrer if there is a proper ground for sustaining the demurrer, "even if the trial court relied on an improper ground, whether or not the defendants asserted the proper ground in the trial court. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 880, fn. 10.)

B. *Compassionate Use Act* (*CUA*)

In November 1996, the electorate enacted Health and Safety Code[2] section 11362.5 as part of Proposition 215. The CUA (§ 11362.5, subd. (a)) was enacted "[t]o ensure seriously ill Californians have the right to obtain and use medical marijuana for medical purposes" when the use has been recommended by a physician in the treatment for illness. (§ 11362.5, subd. (b)(1)(A).) The electorate intended to ensure such patients and their primary caregivers[3] are not subject to criminal prosecution. (§ 11362.5, subd. (b)(1)(B).) To that end, subdivision (d) of section 11362.5, provides that two provisions of the Health and Safety Code—section 11357 [prohibiting possession of marijuana] and section 11358 [prohibiting cultivation of marijuana]—do not apply to patients who have a physician's recommendation to use medical marijuana and the patients' primary care givers. "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).) "[T]he [CUA] is a narrowly drafted statute designed to allow a qualified patient and his or her primary caregiver to possess and cultivate marijuana for the patient's personal use despite the penal laws that outlaw these two acts for all others." (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 772-773.)

Additionally, the CUA was intended "[t]o encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of

---

[2] All undesignated statutory references are to the Health and Safety Code unless otherwise stated.

[3] The CUA defines a primary care giver as "the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, and safety of that person." (§ 11362.5, subd. (e).)

marijuana to all patients in medical need of marijuana." (§ 11362.5, subd. (b)(1)(C).) The California Legislature responded in 2003.

C. *Medical Marijuana Program (MMP)*

Finding "qualified patients and designated primary caregivers" had been prevented from obtaining the protections afforded by the CUA, the Legislature enacted the MMP in 2003. (§ 11362.7 et seq.; Stats. 2003, ch. 875, §§ 1(a)(2), 2.) In order to remedy the situation and to "[e]nhance the access to patients and caregivers to medical marijuana through collective, cooperative cultivation projects" (Stats. 2003, ch. 875, § 1(b)(3)), the MMP required the State Department of Health Services (§ 11362.7, subd. (b)) to "establish and maintain a voluntary program for the issuance of identification cards to qualified patients . . . ." (§ 11362.71, subd. (a)(1).) Subject to the requirements of the MMP (§ 11362.765, subd. (a)), the Legislature provided immunity to "[a]ny individual who provides assistance to a qualified patient . . . or designated primary caregiver" (§ 11362.765, subd. (b)(3)) from "criminal liability under Section 11357 [possession of marijuana or concentrated cannabis], 11358 [cultivation of marijuana], 11359 [possession of marijuana for sale], 11360 [transportation, sale, furnishing, or administering marijuana], 11366 [maintaining a place for selling or giving away a controlled substance], 11366.5 [providing a place for the manufacture or distribution of a controlled substance], or 11570 [place used for the manufacture, sale, storage, or giving away a controlled substance constitutes a nuisance]" (§ 11362.765, subd. (a)). The MMP also permits qualified patients and their designated primary caregivers to join together "in order collectively or cooperatively to cultivate marijuana for medical purposes" without being subject to "state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570." (§ 11362.775.)

In 2010, the Legislature added section 11362.768 to the MMP. (Stats. 2010, ch. 603, § 1.) This section implicitly recognizes the lawfulness of a "marijuana cooperative, collective, dispensary, operator, establishment or provider who possesses, cultivates, or distributes medical marijuana pursuant to" the MMP, but prohibits such entities from operating "within a 600-foot radius of a school." (§ 11362.768, subd. (b).) The restriction applies only to those entities that have a "storefront or mobile retail outlet which ordinarily requires a local business license." (§ 11362.768, subd. (e).) The Legislature reserved to counties and cities the authority to adopt an ordinance or policy further restricting "the location or establishment of a medical marijuana cooperative, collective, dispensary, operator, establishment, or provider." (§ 11362.768, subd. (f).)

D. *Federal Marijuana Laws*

Marijuana is a schedule I controlled substance (21 U.S.C. § 812(c) (Schedule I, par. (c)(10)) under the federal Controlled Substance Act (CSA) (21 U.S.C. § 801 et seq.). Schedule I drugs are the most restrictive and "may be obtained and used only by doctors who submit a detailed research protocol for approval by the Food and Drug Administration and who agree to abide by strict recordkeeping and storage rules. [Citation.]" (*Alliance for Cannabis Therapeutics v. DEA* (D.C. Cir. 1994) 15 F.3d 1131, 1133.) Schedule I drugs are deemed to have "a high potential for abuse (21 U.S.C. § 812(b)(1)(A)) and "no currently accepted medical use in treatment in the United States" (21 U.S.C. § 812(b)(1)(B). The CSA makes it unlawful to distribute, dispense, or possess with the intent to distribute or dispense marijuana. (21 U.S.C. § 841(a).) Mere possession of marijuana, as well, is prohibited by the CSA. (21 U.S.C. § 844(a).) The fact that a California physician has recommended a California patient use medical marijuana does not immunize the patient from prosecution under federal law, even if the patient will suffer irreparable harm if she does not comply with the recommendation.

6

(*Gonzales v. Raich* (2004) 545 U.S. 1, 9;[4] *U.S. v. Oakland Cannabis Buyers' Cooperative* (2001) 532 U.S. 483, 494, fn. 7 [no medical necessity exception to the CSA's prohibition against manufacturing and distributing marijuana, even if an individual is "'seriously ill' and lacks alternative avenues for relief"].)  In other words, the federal government may enforce the CSA notwithstanding this state's CUA and MMP.

E.  *Our Supreme Court's Decision in* City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.

        In *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729 (*City of Riverside*), the City of Riverside enacted a zoning ordinance that had the effect of banning facilities that distribute medical marijuana within that city.  (*Id.* at p. 738.)  The issue is *City of Riverside* was whether California's medical marijuana laws preempted such an ordinance.  (*Id.* at p. 737.)  In concluding state statutes did not preempt a city's constitutional authority to enact zoning ordinances (Cal. Const., art. XI, § 7), the Supreme Court held:  "[T]he CUA and the MMP are but incremental steps toward freer access to medical marijuana, and the scope of these statutes is limited and circumscribed.  They merely declare that the conduct they describe cannot lead to arrest or conviction, or be abated as a nuisance, as violations of enumerated provisions of the Health and Safety Code.  Nothing in the CUA or the MMP expressly or impliedly limits the inherent authority of a local jurisdiction, by its own ordinances, to regulate the use of its land, including the authority to provide that facilities for the distribution of medical marijuana will not be permitted to operate within its borders."  (*City of Riverside*, *supra*, 56 Cal.4th at p. 738.)

---

        [4] Raich suffered from a serious medical condition that her physician believed "would certainly cause Raich excruciating pain and could very well prove fatal" is she were denied cannabis treatments.  (*Gonzales v. Raich*, *supra*, 545 U.S. at p. 7.)

The court observed that "the CUA simply declares that (1) no physician may be punished or denied any right or privilege under state law for recommending medical marijuana to a patient (§ 11362.5, subd. (c)), and (2) two specific state statutes prohibiting the possession and cultivation of marijuana, sections 11357 and 11358 respectively, 'shall not apply' to a patient, or the patient's designated primary caregiver, who possesses or cultivates marijuana for the patient's personal medical use upon a physician's recommendation or approval (§ 11362.5, subd. (d))." (*City of Riverside*, *supra*, 56 Cal.4th at p. 744.) Discussing the implications of the CUA, the court reiterated that "'the only "right" to obtain and use marijuana created by the [CUA] is the right of "a patient, or . . . a patient's primary caregiver, [to] possess[] or cultivate[] marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician" without thereby becoming subject to punishment under sections 11357 and 11358 of the Health and Safety Code. [Citation.]' (*Ross*[*v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920,] 929.)" (*City of Riverside*, *supra*, 56 Cal.4th at p. 746.)

On the other hand, the MMP does address the issue of collectives and the distribution of medical marijuana. But like the CUA, the MMP created no "'broad right' of access to medical marijuana 'without hindrance or inconvenience' . . . ." (*City of Riverside*, *supra*, 56 Cal.4th at p. 753.)

F.  *Standing*

Against this backdrop, we now turn to the issue of standing. The complaint does not allege Schwartz attempted to open a medical marijuana dispensary, collective, or cooperative in Dana Point and was denied a variance from the City's zoning regulations. Neither does it allege Schwartz even lives in Dana Point. Rather, Schwartz argues he has standing to contest the City's zoning decision and effort to close medical marijuana dispensaries because he is a medical marijuana user and the City's action placed a burden

8

on his ability to obtain medical marijuana, in that he must now drive farther to obtain it than he did when he was able to acquire medical marijuana from Beach Cities.  In essence, he claims the City's action adversely affects his right to conveniently obtain medical marijuana.

As a general rule, a party must be "beneficially interested" in the subject matter to have standing to sue.  (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361-362; *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 814.)  A party is beneficially interested if he or she "has some special interest to be served or some particular right to be preserved or protected over and above the interest in common with the public at large.  [Citations.]" (*Carsten v. Psychology Examining Com.*, *supra*, 27 Cal.3d at p. 796.)  Additionally, a declaratory relief action requires an "actual controversy relating to the legal rights and duties of the respective parties."  (Code of Civ. Proc., § 1060.)  In other words, Schwartz's action purports to seek "a declaration *of his . . . rights* or duties" with respect to the City's action.  (*Ibid.*, italics added.)  "A complaining party's demonstration that the subject of a particular challenge has the effect of infringing some constitutional or statutory right may qualify as a legitimate claim of beneficial interest sufficient to confer standing on that party.  [Citation.]"  (*Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 315.)

The "beneficially interested" standard "is equivalent to the federal 'injury in fact' test."  (*Associated Builders & Contractor, Inc. v. San Francisco Airports Com.*, *supra*, 21 Cal.4th at p. 362.)  Under the federal test, an injury in fact requires "an invasion of *a legally protected interest* which is (a) concrete and particularized, [citations] and (b) 'actual or imminent, not "conjectural" or "hypothetical,"' [citation]."  (*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 560, italics added, fn. omitted.)

9

Although Schwartz alleges the City's zoning regulations affected him because he has to drive farther than before to obtain medical marijuana, he failed to demonstrate the City's action infringed a legally protected interest. Schwartz contends the City's zoning regulations impacted his fundamental right under article I, section 1 of the California Constitution to control his healthcare, but he does so without reasoning or citation to authority. He merely maintains such a right exists because the CUA and MMP "*moved* marijuana from the illegal and unapproved category (to which even fundamental rights do not apply) to the legal and approved category (to which Schwartz's fundamental rights apply)" and "the CUA and MMP[] legalized marijuana as *medicine* which brought it within the auspices of his preexisting fundamental right to control his medical care without government interference."

"'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.] 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2; *People v. Stanley* (1995) 10 Cal.4th 764, 793.)" (*Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956.)

Moreover, Schwartz concedes that neither the CUA nor the MMP created any fundamental right to medical marijuana. More to the point, the CUA and MMP did not create a right to "convenient access" to medical marijuana. (*City of Riverside*, *supra*, 56 Cal.4th at pp. 762-763.) Indeed, the MMP does "not mandate that local jurisdictions permit" medical marijuana dispensaries. (*The City of Riverside*, *supra*, 56 Cal.4th at p. 761.) Schwartz attempts to evade the effect of *City of Riverside* by the lawyerly sleight of hand of claiming it was not the CUA or the MMP that made his right to medical

10

marijuana fundamental, but the fact that the CUA and MMP designated marijuana as a medicine and thus brought medical marijuana under his "preexisting fundamental right to control his medical care without governmental interference." We are not convinced.

Because Schwartz does not have a right to the convenient access to medical marijuana (*City of Riverside*, *supra*, 56 Cal.4th at pp. 762-763), and the City did not prohibit his cultivation, possession, or use of medical marijuana, he has failed to allege the City's action caused him a concrete, actual "injury in fact," i.e., the City's action did not invade a legally protected interest of Schwartz's. Accordingly, we find the trial court did not err sustaining the City's demurrer based on Schwartz's lack of standing to bring the action.

III

DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.

11
